1

2

3

4

5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6

7   HAHN T. LUONG,                          )
                                           )
8            Plaintiff,                     )        CASE NO.  C06-1756-MJB[1]
                                           )
9        v.                                 )        MEMORANDUM OPINION
                                           )
10  MICHAEL J ASTRUE,                       )
    Commissioner of Social Security,        )
                                           )
11                                          )
             Defendant.                     )
12  _____ )

13          Plaintiff Hahn Luong, appeals to the District Court from a final decision of the

14  Commissioner of the Social Security Administration (the "Commissioner") denying her

15  application for Supplemental Security Income benefits under Title XVI of the Social Security

16  Act.  For the reasons set forth below, the Commissioner's decision shall be REVERSED and this

17  matter REMANDED for further administrative proceedings.

18                              I.  PROCEDURAL HISTORY

19          Plaintiff filed an application for Supplemental Security Income ("SSI") benefits on March

20  20, 2003.  Tr. 17, 70-73.  Plaintiff alleged that she became unable to work in April, 2000, based

21  on nervousness and depression.  Tr. 70.  Her application for benefits was denied initially (Tr. 28-

22  31) and on reconsideration (Tr. 34-35).  On Plaintiff's timely request, a hearing was held on

23

24          [1]Pursuant to the consent of the parties, this case has been referred to the undersigned in
    accordance with 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and Local Rule MJR 13.

25

    MEMORANDUM OPINION
26  Page - 1

1   September 21, 2005, before Administrative Law Judge ("ALJ")Verrell Dethloff.  Tr.17.  Plaintiff

2   was represented by counsel and testified at the hearing.  Tr. 269-273.  Plaintiff's son also testified

3   at the proceedings.  Tr. 274-279.  The ALJ issued a decision on June 14, 2006, finding that

4   Plaintiff was capable of performing her past relevant work as a cook's helper and thus, not

5   disabled within the meaning of the Social Security Act.  Tr. 25.  The Appeals Council denied

6   Plaintiff's request for review on October 27, 2006, making the ALJ's decision the final decision

7   of the Commissioner.  Tr. 6-10.  Plaintiff timely filed her appeal with this Court.

8                          II.  THE PARTIES' POSITIONS

9        Plaintiff requests that the Court reverse the Commissioner's decision and remand for

10  award of benefits.  Plaintiff argues that the ALJ erred by: (1) failing to credit Plaintiff's

11  testimony; (2) failing to provide specific and legitimate reasons for assigning "no significant

12  weight" to the opinions of Dr. Vuong and Dr. Washburn; and (3) concluding that Plaintiff is

13  capable of performing her past relevant work as cook's helper, a job with a medium exertional

14  level.  Defendant responds that the Court should affirm the Commissioner's final decision

15  because it is supported by substantial evidence and is free of legal error.

16                          III.  STANDARD OF REVIEW

17       The court may set aside the Commissioner's denial of social security disability benefits

18  when the ALJ's findings are based on legal error or not supported by substantial evidence in the

19  record as a whole.  *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence is

20  defined as more than a mere scintilla but less than a preponderance; it is such relevant evidence

21  as a reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*,

22  881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving

23  conflicts in medical testimony, and for resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035,

24  1039 (9th Cir. 1995).  Where the evidence is susceptible to more than one rational interpretation,

25
    MEMORANDUM OPINION
26  Page - 2

1   it is the Commissioner's conclusion which must be upheld.  *Sample v. Schweiker*, 694 F.2d 639,

2   642 (9th Cir. 1982).

3                               IV.  EVALUATING DISABILITY

4       The claimant bears the burden of proving that he is disabled.  *Meanel v. Apfel*, 172 F.3d

5   1111, 1113 (9th Cir. 1999).  Disability is defined as the inability to engage in any substantial

6   gainful activity by reason of any medically determinable physical or mental impairment, which

7   can be expected to result in death, or which has lasted or can be expected to last for a continuous

8   period of not less than twelve months.  42 U.S.C. § 423 (d)(1)(A).

9       The Social Security regulations set out a five-step sequential evaluation process for

10  determining whether claimant is disabled within the meaning of the Social Security Act.  *See* 20

11  C.F.R. § 416.1520.  At step one, the claimant must establish that he or she is not engaging in any

12  substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  At step two, the claimant

13  must establish that he or she has one or more medically determinable severe impairments or

14  combination of impairments.  If the claimant does not have a "severe" impairment, he or she is

15  not disabled.  *Id.* at § (c).  At step three, the Commissioner will determine whether the claimant's

16  impairment meets or equals any of the listed impairments described in the regulations.  A

17  claimant who meets one of the listings is disabled.  *See Id.* at § (d).

18      At step four, if the claimant's impairment neither meets nor equals one of the impairments

19  listed in the regulations, the Commissioner evaluates the claimant's residual functional capacity

20  and the physical and mental demands of the claimant's past relevant work.  *Id.* at § (e).  If the

21  claimant is not able to perform his or her past relevant work, the burden shifts to the

22  Commissioner at step five to show that the claimant can perform some other work that exists in

23  significant numbers in the national economy, taking into consideration the claimant's residual

24  functional capacity, age, education, and work experience.  *Id.* at § (f); *Tackett v. Apfel*, 180 F.3d

25

26  MEMORANDUM OPINION
    Page - 3

1094, 1100 (9th Cir. 1999).  If the Commissioner finds the claimant is unable to perform other

work, then the claimant is found disabled.

V.  SUMMARY OF THE RECORD EVIDENCE

Plaintiff was 60 years old at the time of her initial hearing before the ALJ.  She has

completed two years of college.  Tr. 116.  Plaintiff's prior work experience included fifth grade

teacher in Vietnam, work-study job at college, and cook's helper.  *Id*.  Plaintiff last worked in

2000. Tr. 78.  She asserts that "her boss/employers told her not to work any more because of

dizziness and she fell down twice while she was working at a restaurant."  *Id*.  Plaintiff also

asserts that she had to take leave from work 1-2 days a week due to headaches.  *Id*.  Other

evidence relevant to Plaintiff's allegations is incorporated into the discussion below.

VI.  THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity

since the alleged onset of her disability.  Tr. 19.  At step two, he found that Plaintiff has the

following severe impairment: depression.  *Id*.  At step three, the ALJ found that Plaintiff does not

have an impairment or combination of impairments that meets or medically equals one of the

listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 21.  The ALJ found that

the Plaintiff retains the residual functional capacity to perform the full range of exertional

demands at all levels of the occupational base, and non-exertionally, she retains the capacity to

understand, recall and execute simple instructions, carry out repetitive activities, respond to

changes in the workplace, and deal with co-workers and supervisors. Tr. 21-22.  In reaching his

decision, the ALJ found that Plaintiff's statements about the intensity, duration, and limiting

effects of her impairment were not entirely credible.  Tr.22-23.  At step four, the ALJ found that

Plaintiff is able to perform her past relevant work as a cook's helper, both as she previously

performed this job and as it is generally performed in the national economy.  Tr. 24-25.  Thus, the

MEMORANDUM OPINION
Page - 4

1    ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security

2    Act, at any time through the date of the decision.  Tr. 25.

3                                      VII. DISCUSSION

4    A.    PHYSICIANS' OPINIONS

5          Plaintiff claims that the ALJ did not provide specific and legitimate reasons for assigning

6    "no significant weight" to the opinions of her treating physician, Dr. Vuong, and her examining

7    psychologist, Dr. Washburn.  Plaintiff argues that, instead, the ALJ erroneously relied on  two

8    reviewing psychologists, whose opinions are entitled to less weight than those of the treating and

9    evaluating doctors.  Dkt. #11 at 9-12.  Defendant contends that the ALJ correctly weighed the

10   opinions of Dr. Vuong and Dr. Washburn.

11          As a general rule, more weight should be given to the opinion of treating and examining

12   doctors than to the opinion of nonexamining doctors.  *Lester v. Chater*, 81 F.3d 821, 830-31

13   (9th Cir. 1995).  To reject an uncontradicted opinion of a treating or examining doctor, an ALJ

14   must state clear and convincing reasons that are supported by substantial evidence.  *Id*.  If a

15   treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may

16   reject it by providing specific and legitimate reasons that are supported by substantial evidence.

17   *Id.; see also Andrews*, 53 F.3d at 1043; *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

18   In the present case, because the record reflects that the ALJ gave greater weight to the reviewing

19   physicians' opinions about Plaintiff's ability to work, the "specific and legitimate" standard is

20   applicable.

21          1.    Dr. Vuong

22          Dr. Vuong treated Plaintiff from 1991-92 and then from September 2002 to the present.

23   Tr. 181-191, 220-245.  Dr. Vuong twice gave an opinion regarding Plaintiff's ability to work.

24   First, in a note dated September 9, 2002, Dr, Vuong certified that Plaintiff had been under her

25

26   MEMORANDUM OPINION
     Page - 5

1  care for headache, dizziness, sleep disturbances, and probably depression, and she also opined

2  that Plaintiff is "not able to work during the next six months." Tr. 188.  In a second note dated

3  December 8, 2005, Dr. Vuong certified that she was treating Plaintiff for headache, sleep

4  disturbances, low back pain, osteoporosis, and post herpetic neuralgia, and she again opined that

5  Plaintiff "is unable to work in the next 6 months." Tr. 256.

6        The ALJ found that this opinion evidence from Dr. Vuong was entitled to no persuasive

7  weight.  Tr. 23.  The ALJ reasons for rejecting Dr. Vuong's opinion were: (i) neither note

8  offered any narrative explanation for limiting Plaintiff from the entire work world based upon the

9  listed conditions, and (ii) neither note referred to or contained any objective evidence, such as x-

10  ray reports, MRI studies, bone scans or laboratory data to clinically correlate the plaintiff's

11  reported symptoms.  *Id.*

12        Plaintiff argues that the ALJ's reasons are incorrect because Dr. Vuong's certifications of

13  disability cannot be read in isolation from the rest of Plaintiff's chart, which reflect Dr. Vuong's

14  evaluation and observation of Plaintiff over many years.  *See* Dkt. #11 at 10.  However, the

15  treating physician's opinion on the ultimate issue of disability is not necessarily conclusive.

16  *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  Further, an ALJ may discredit treating

17  physicians' opinions that are conclusory, brief, and unsupported by clinical findings.  *Id.*

18        Here, Dr. Vuong's opinions that Plaintiff was unable to work were both conclusory and

19  brief.  Additionally, the medical records from Dr. Vuong only reflect a chronological report of

20  Plaintiff's symptoms and treatments, and do not include any explanations or support for Dr.

21  Vuong's opinions that the Plaintiff was unable to work.  Moreover, the treatment records from

22  Dr. Vuong contain no evidence of objective testing that demonstrates any significant limitations

23  on Plaintiff's physical and mental capacity to do substantial gainful activity.  Accordingly, this

24  Court concludes that the ALJ properly rejected Dr. Vuong's disability opinion on the basis of

25

26  MEMORANDUM OPINION
    Page - 6

1    specific and legitimate reasons supported by substantial evidence.

2         2.    Dr. Washburn

3         Dr. Washburn conducted psychological evaluations of Plaintiff in 2002, and he diagnosed

4    her with major depression and anxiety.  Tr. 169-80.  In April 2002, Dr. Watson opined that

5    Plaintiff's "poor delayed memory and poor visual and auditory concentration is severe enough to

6    prevent her from performing satisfactorily in any employment."  Tr. 174 (emphasis in original).

7    In May 2002, Dr. Washburn concluded that Plaintiff has poor auditory and visual concentration

8    and attention, she would have difficulty following directions and assimilating information, and

9    she would have difficulty working a full day because of headaches and depression.  Tr. 179.

10        In finding that Plaintiff's severe impairment is depression, the ALJ expressly

11   acknowledged Dr. Washburn's diagnosis of Plaintiff's depression in 2002.  Tr. 19.  However, the

12   ALJ failed to mention Dr. Washburn's opinions regarding the impact of Plaintiff's impairments

13   on her ability to work.  The ALJ must consider all relevant evidence and may not select

14   and discuss only that evidence that favors his ultimate conclusion.  *See Herron v. Shalala*,

15   19 F.3d 329, 333 (7th Cir. 1994); *see also Young v. Secretary of Health and Human Services*,

16   957 F.2d 386, 393 (7th Cir. 1992) (ALJ must articulate his reason for rejecting evidence "within

17   reasonable limits" in order for meaningful appellate review).  Here, the ALJ does not state what

18   weight, if any, he accorded to Dr. Washburn's opinion that Plaintiff is unable to work.

19   Accordingly, this Court finds that the ALJ erred in failing to evaluate Dr. Washburn's

20   disability opinion.

21        3.    Nonexamining Doctors

22        Plaintiff argues that the ALJ erred in relying on the opinions of the two reviewing

23   psychologists, Dr. Peterson and Dr. Eisenhauer.  Dkt. #11 at 12.  Plaintiff contends that *"[o]nly*

24   the reviewing psychologists are of the opinion that Plaintiff can maintain a pace at work on a

25

26   MEMORANDUM OPINION
     Page - 7

1   sustained basis -- an opinion inconsistent with all the medical evidence." *Id.*

2          In August 2003, Dr. Eisenhauer completed a Mental RFC Assessment form and a

3   Psychiatric Review Technique form based on his review of evidence in Plaintiff's file.  Tr. 201-

4   217.  Dr. Peterson later affirmed Dr. Eisenhauer's assessments on both forms.  Tr. 201, 205.

5   These reviewing doctors opined that Plaintiff's symptoms are not expected to impose greater

6   than moderate limitations and that Plaintiff remains able to work.  *See* Tr. 203.

7          In describing his consideration of the reviewing doctors' opinions, the ALJ initially noted

8   that Drs. Eisenhauer and Peterson had concluded that Plaintiff's depression was not severe

9   enough to preclude all work activity.  Tr. 23.  The ALJ also highlighted the following narrative

10  summary from the reviewing doctors' assessment of Plaintiff's mental RFC:

11          This woman is the caretaker off [sic] her paraplegic husband, is stressed and
            depressed.  Her [activities of daily living] are intact and overall so is her mental
12          status.

13          She is oriented with intact memory.  She is goal directed.  The claimant is able to
            understand, recall and execute simple instructions, can understand and recall
14          detailed ones, but will have difficulty with the execution of detailed tasks due to
            variable concentration.  While ongoing symptoms of anxiety and depression
15          reduce extended concentration and tolerance of work stress, it is not to the extent
            of completely inhibiting the claimant from carrying out repetitive instructions
16          within an average work schedule and work week. The symptoms are not expected
            to impose greater than moderate limitations, as the claimant is able to take care of
17          herself, run her household and take care of her disabled husband.

18          There is no indication of a lack of social skills or otherwise socially inappropriate
            behavior.  The claimant remains able to work with others and able to respond
19          appropriately to supervisors.

20          The claimant remains able to adapt to changes on the job.

21  Tr. 23-24 (citation omitted).  The ALJ concluded that these opinions of  Drs. Eisenhauer and

22  Peterson were entitled to determinative weight on the issue of Plaintiff's residual functional

23  capacity to perform work-related activities.  Tr. 24.  The ALJ indicated that he gave persuasive

24  weight to their opinions because: (i) there is no credible medical evidence to contradict these

25
    MEMORANDUM OPINION
26  Page - 8

1   findings, and (ii) there is no objective medical data to indicate an impairment of greater severity

2   than outlined in [their] reports.  *Id*.

3          This Court concludes that although the ALJ articulated specific reasons for giving greater

4   weight to the reviewing physicians' opinions, his reasons are neither legitimate nor supported by

5   substantial evidence.  As noted in the discussion in subsection 2 *supra*, the ALJ failed to address

6   Dr. Washburn's opinion that Plaintiff would have difficulty working a full day due to her

7   depression and headaches.  Not only did Dr. Washburn identify a greater level of impairment

8   than outlined in the opinions of the two reviewing physicians,[2] but also, Dr. Washburn based his

9   opinion on examination and objective testing of Plaintiff's mental health.  Thus, because neither reason

10  was a specific and legitimate reason supported by substantial evidence in the record, the ALJ

11  erred by giving greater weight to Dr. Peterson's and Dr. Eisenhauer's opinions on this basis.

12  B.     PLAINTIFF'S CREDIBILITY

13         Plaintiff argues that the ALJ erred by failing to credit her testimony.  Defendant asserts

14  that the ALJ correctly weighed Plaintiff's testimony in determining her residual functional

15  capacity.

16         If a claimant has established an underlying impairment which reasonably could be

17  expected to produce the alleged subjective complaints and there is no evidence of malingering,

18  the ALJ must provide clear and convincing reasons for rejecting the claimant's testimony.  See

19  *Smolen v. Charter*, 80 F.3d 1273, 1281 (9th Cir. 1996).  General findings are insufficient; rather,

20  the ALJ must identify what testimony is not credible and what evidence undermines the

21

22         [2] For example, while Dr. Washburn states that Plaintiff's ability to understand, remember
    and follow complex instructions is markedly limited (Tr. 171), the reviewing doctors state that it
23  is moderately limited (Tr. 201).  Similarly, while Dr. Washburn concludes that Plaintiff's ability to
    respond to and tolerate work pressures and expectations of a normal work setting is severely
24  limited (Tr. 177), the non examining doctors state that Plaintiff is only moderately limited in her
    ability to complete a normal workday and work week (Tr. 201).
25

26  MEMORANDUM OPINION
    Page - 9

claimant's complaints. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Varney v. Sec'y of Health and Human Servs.*, 846 F.2d 581, 584 (9th Cir. 1988) (Varney I). In assessing credibility, the ALJ may consider, for example: 1) ordinary techniques of credibility evaluations, such as the claimant's reputation for lying and prior inconsistent statements concerning the symptoms; 2) unexplained or inadequately explains failure to seek treatment or to follow a prescribed course of treatment; 3) the claimant's daily activities; and 4) medical evidence tending to discount the severity of subjective claims. *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001).

Here, the ALJ accurately described Plaintiff's testimony at the hearing. Tr. 22. However, the ALJ found that Plaintiff's statements concerning the intensity, duration and limiting effects of her impairments are not entirely credible. Tr. 23. He identified two reasons for not fully crediting Plaintiff's testimony: (1) her alleged limitations are self-imposed restrictions which are not supported by the medical evidence; and (2) her activities of daily living have not been profoundly compromised by her depression, as evidenced by the ability to maintain a home, shop, cook, attend temple services on a regular basis, socialize, exercise, and care for her disabled husband. Tr. 22. Each of the ALJ's reasons are addressed below.

1.    Objective Medical Evidence

The ALJ stated that Plaintiff's claimed level of limitations were not supported by any medical evidence. Tr. 22. However, as previously noted, the ALJ has not considered Dr. Washburn's diagnosis of Plaintiff's disability in assessing her level of limitations. Dr. Washburn conducted a clinical evaluation of the Plaintiff's mental status and concluded that she has poor concentration and attention, that she has problems following directions and assimilating information and that she would be unable to work a full day because of her headaches and anxiety. Tr. 179. These conclusions are not inconsistent with Plaintiff's claimed

MEMORANDUM OPINION
Page - 10

level of disability.  Hence, the ALJ's first reason was not a clear and convincing basis for

rejecting Plaintiff's credibility.

       2.     <u>Plaintiff's Daily Activities</u>

     The ALJ noted that Plaintiff's testimony at the hearing contrasted with her periodic daily

activities reports.  Tr. 22.  Specifically, the ALJ stated:

> In contrast to this testimony at the hearing, the claimant in her periodic daily
> activities reports said that she cooked and took care of the house and her family
> and got the kids ready for school.  Her husband said that she liked to cook and
> keep things clean, and that she like to stay home and cook for her family.  She
> was said to talk with some frequency with friends on the phone, and visited an
> acupuncturist on a regular basis, and she and her husband sometimes did the
> shopping together.  She visited with friends and family.  She also described, or
> had it described for her, dizziness and an inability to always finish a project, but in
> general her activities of daily living were self described as being performed most
> times.

Tr. 22 (citing Exhibits 5E and 7E).

     Yet, careful review of the record shows that the ALJ based these findings, in part, on an

incomplete, unsigned, and undated daily activities report (Tr. 98-102), and on his selective

reading of completed daily activities reports that were signed by Plaintiff and her husband in

February and April 2003 (Tr. 90-95, 111-115).   In her February 2003 daily activities report,

Plaintiff stated that her son does all the vacuuming and she cannot do laundry because she

forgets to put the detergent.  Tr. 91.  Plaintiff also indicated that when she goes grocery

shopping with her husband, he makes the list and that when she sees too many people she

sometimes she stands outside and just her husband does the grocery shopping.  *Id.*  In the

remarks section of the daily activities report, Plaintiff states that before she could do everything

and now she cannot do most things.  Tr. 93.  These statements are consistent with her

testimony.[3]  Additionally, these statements were also corroborated by Plaintiff's son's testimony.

---

     [3]Plaintiff testified that she stopped working because she was having problems with
dizziness.  Tr. 270.  During the day, she walks around the house and she helps her 16-year-old

MEMORANDUM OPINION
Page - 11

1    Tr. 274-277.

2         Moreover, while the ALJ noted Plaintiff's statement from the incomplete daily activities

3    report that she cooks lunch and dinner once everyday, he did not acknowledge her followup

4    explanation that when she gets dizziness or headaches she lets her children eat fast food 2-3

5    times a week. Tr. 98.  Similarly, the ALJ noted Plaintiff's husband's statement that she cooks

6    food for the family and takes care of the house, but the ALJ did not mention her husband's

7    statement that Plaintiff is weak and cannot do these household chores.  *See* Tr. 113.  Further,

8    though the ALJ indicated that Plaintiff gets her children ready for school, Plaintiff actually stated

9    that on a normal day she "wake[s] up child" and the "child goes to school on own." Tr. 98.

10   Thus, when read in their entirety, the daily activities reports are consistent with the plaintiff's

11   testimony.  Accordingly, this Court finds that the ALJ erred in rejecting Plaintiff's testimony on

12   this basis.

13   C.     PAST RELEVANT WORK

14        Plaintiff argues that ALJ erred in concluding that she is capable of performing her past

15   relevant work as a cook's helper, a job with a medium exertional level.  Plaintiff claims that:

16

17   (1) she has no past relevant work, and (2) she does not have the residual function capacity to

18   perform medium level work as a cook's helper.

19   _____

20   son cook when he comes home from school.  *Id.*  She also indicated that her son cleans the house.
     *Id.*  Plaintiff stated that she does not clean the house because she has headaches frequently (Tr.
21   270), and she does not vacuum because she cannot hold the vacuum cleaner (Tr. 271).  Plaintiff
     also testified that her son does the laundry because she forgets to put in the detergent or does not
22   know how to turn the dial, and she does not cook when she is alone at home because she forgot
     to turn off the burner one time and there was a fire.  Tr. 272.  Plaintiff stated that she visits the
23   temple once a week or once every two weeks.  *Id.*  Plaintiff further indicated that she does not
     have a driver's license because she feels dizzy if she sits in the car and she is scared even when
24   someone is driving her someplace.  Tr. 273.

25   MEMORANDUM OPINION
     Page - 12
26

Past relevant work is work that the claimant has done in the past 15 years, that lasted long enough for the claimant to learn to do it, and was substantial gainful activity. 20 C.F.R. § 416.965(a). In the present case, the record reflects that Plaintiff worked as a cook's helper from 1997 to March 2000. Tr. 79, 103. Therefore, her past work clearly satisfies the first two components of past relevant work. Thus, the focus here is whether Plaintiff's past work constituted substantial gainful activity (SGA).

1.    Substantial Gainful Activity

Substantial gainful activity is work done for pay or profit that involves significant mental or physical activities. *Lewis v. Apfel*, 236 F.3d 503, 515 (9th Cir. 2001) (citing 20 C.F.R. §§ 404.1571- 404.1572 & 416.917-416-975). Earnings can be a presumptive, but not conclusive sign of whether a job is substantial gainful activity. *Id.* Regulation §§ 404.1547(b), 404.1575(c), 416.974(b) and 416.975(c) provide for evaluation of work in terms of *average* monthly earnings. SSR 83-35 (emphasis in original). If an employee's average monthly "countable earnings" exceed the Earnings Guidelines, the employee will ordinarily be found engaged in SGA. *Id.; see also* 20 C.F.R. §§ 404.1574(b)(2) & 416.974(b)(2) (from January 1990-June 1999 monthly earnings averaged more than $500; from July 1999 - December 2000 monthly earnings averaged more than $700). If average monthly earnings are equal to or less than these amounts, then it shows that claimant has not engaged in substantial gainful activity. *See* 20 C.F.R. §§ 404.1574(b)(3) & 416.974(b)(3).

Plaintiff contends that her past work as a cook's helper does not constitute SGA because her average monthly earnings have never exceeded approximately $500. Dkt. #11 at 12. Defendant responds that Plaintiff's past work was SGA because Plaintiff's reported earnings reflect that she averaged more than $500 per month in 1998, a fact noted by Plaintiff in her

MEMORANDUM OPINION
Page - 13

1    opening brief.[4]  See Dkt. #13 at 13.

2         Earnings are generally averaged over the actual period of time in which work was

3    performed.  SSR 83-35.  However, when an employee's earnings or work activities vary

4    somewhat from month-to-month, it may be necessary to average the "countable earnings"

5    reported over a number of months in order to compare those earnings with the applicable

6    monthly amount in the Earnings Guidelines.  *Id.*  Generally, such earnings are to be averaged

7    over the entire period of work requiring evaluation.  However, it will be necessary to average

8    separately the distinct periods of work involved where there is a regulatory change in the SGA

9    earnings level or there is a significant change in work patterns or earnings.

10        Here, Plaintiff's period of work extends from 1997 through March 2000.[5]  As noted

11   above, different SGA earnings levels applied during this period.  Assuming, for sake of

12   argument, that Plaintiff began working in January 1997, her monthly earnings through June 1999

13   averaged $396, and the SGA level was $500.  Then from July 1999 through March 2000,

14   Plaintiff's monthly earnings averaged $874, and the SGA level was $700.  Thus, Plaintiff's

15   income during this latter period exceeded the level of presumptive substantial gainful activity,

16   and accordingly her work as a cook's helper constitutes past relevant work.

17        2.    Plaintiff's RFC to Perform Past Relevant Work

18        Plaintiff argues that the ALJ erred in determining that she could do her past relevant

19   work as a cook's helper as she performed it before and as it is performed in the economy.

20   Plaintiff initially claims that she cannot perform work as a cook's helper because of her physical

21   condition - 60 years old, 4'7" in height and under 100 pounds.  However, age and body habitus

22   _____

23        [4]In describing her earnings in her opening brief, Plaintiff states: "In her highest-earning year, 1998, she averaged only $507 per month."  Dkt. #11 at 3.

24        [5]Plaintiff's yearly earnings were as follows: 1997 - $3,430.50; 1998 - $6,090.75; 1999 - $4,743.75; and 2000 - $5,491.25.  Tr. 75.

25

26   MEMORANDUM OPINION
     Page - 14

1  (i.e. natural body build, physique, constitution, size, and weight) insofar as they are unrelated to

2  individual's medically related impairments and related symptoms, are not factors in assessing

3  RFC in initial claims.  SSR 96-8p, available at 1996 WL 374184*2.  Rather, the residual

4  functional capacity finding must be based only on plaintiff's impairment.  *Id*.  In the present case,

5  Plaintiff's claimed impairment is her depression and not her physical condition.  Thus, her

6  physical condition cannot be considered a factor in determining her RFC.

7          Furthermore, the ALJ's conclusion about Plaintiff's RFC is based on his evaluation of

8  Plaintiff's credibility and the medical evidence on record.  In light of the discussion in sections A

9  and B *supra*, the ALJ will need to fully evaluate Dr. Watson's disability opinion and re-evaluate

10  Plaintiff's credibility on remand.  Because such re-evaluations would necessarily impact the

11  determination of Plaintiff's RFC and whether or not she can work at a medium level of exertion,

12  this court need not further evaluate this issue, which is best addressed on remand as it is the ALJ

13  who is responsible for weighing the evidence and resolving ambiguities in the record.  *See*

14  *Andrews*, 53 F.3d at 1039.

15                              VII.   CONCLUSION

16          The Commissioner's determination to deny Plaintiff SSI benefits is not supported by

17  substantial evidence and is not free of legal error.  Therefore, the Court REVERSES the

18  Commissioner's decision and REMANDS this matter for further administrative proceedings,

19  consistent with above discussion.

20          DATED this 24th day of July, 2007.

21

22

23                                                  MONICA J. BENTON
                                                    United States Magistrate Judge
24

25

26  MEMORANDUM OPINION
    Page - 15